IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 10-3495

DARREN JOHNSON,
Appellant

v.

NORMAN STEMPLER, M.D., DENNIS MOYER, M.D.,
COMMISSIONER MARTIN HORN, PRISON HEALTH SERVICES,
INC., CORRECTIONAL PHYSICIAN SERVICES, INC.,
Appellees

BRIEF OF APPELLEE PRISON HEALTH SERVICES, INC.

On Appeal from the Order and Opinion of July 19, 2010 by
the Honorable Jacob P. Hart, United States Magistrate Judge
for the Eastern District of Pennsylvania at Civil Action No. 00-0711
denying the Motion of Darren Johnson to Reinstate Prison Health Services, Inc.
as a defendant

GOLD & FERRANTE, P.C.
BY: ALAN S. GOLD
ATTY. ID NO. 23400
261 Old York Road, Suite 526
Jenkintown, PA 19046
(215)885-1118
Attorney for Appellee,
Prison Health Services, Inc.

## <u>TABLE OF CONTENTS</u>                                    <u>PAGE</u>

TABLE OF AUTHORITIES............................................. iii

CORPORATE DISCLOSURE STATEMENT.............................. 1

STATEMENT OF RELATED CASES AND PROCEDURES... 2

COUNTERSTATEMENT OF THE ISSUES PRESENTED
FOR REVIEW............................................................... 3

STANDARD OF REVIEW.............................................. 5

COUNTERSTATEMENT OF THE CASE................................. 6

COUNTERSTATEMENT OF THE FACTS............................. 11

SUMMARY OF THE ARGUMENT......................................... 19

ARGUMENT.................................................................... 21

    A.    Standard of Review................................... 21

    B.    The Law of the Commonwealth of Pennsylvania
Applies To The Interpretation of The Agreement
Between Prison Health Services, Inc. and Correctional
Physician Services, Inc. Because the Agreement
Contains A Choice Of Law Provision Requiring
the Application of Pennsylvania Law..................... 21

    C.    Pennsylvania Law Applies to the Determination
of Whether Johnson Has Set Forth a Claim for
De Facto Merger......................................... 28

    D.    Johnson Has Waived The Issue Of De Facto
Merger Because He Never Raised It In His Motion
Based On Federal Rule Of Civil Procedure 60(b). 29

    E.    This Court Did Not Authorize The District Court
To Decide The De Facto Merger Issue In Its
Remand Order........................................... 29

PAGE

F.   Johnson Failed To Meet His Burden Concerning
A De Facto Merger Since He Has Not Shown A
Continuity Of Ownership........................................... 29

G.   Johnson Has Waived His Argument Concerning the
Applicability of Brzozowski v. Correctional
Physician Services, Inc., 360 F.3d 173 (3d Cir. 2004)
Since He Never Raised It In His Rule 60(b)(2) Motion.. 34

H.   This Court Did Not Authorize The District Court To
Consider The Test Utilized In Brzozowski v.
Correctional Physician Services, Inc., 360 F.3d
173 (3d Cir. 2004) On Remand. ................................... 35

I.   The Test Utilized By This Court in Brzozowski v.
Correctional Physician Services, Inc., 360 F.3d 173
(3d Cir. 2004) Fails To Apply Here............................ 35

J.   Johnson's Contention That The District Court Incorrectly
Decided The Summary Judgment Motion Against PHS In
2005 Because Of The Wrong Closing Date Is Not Before
This Court................................................................... 38

CONCLUSION............................................................... 39

APPENDIX A - Watson v. Prison Health Services, Inc., et al.,
Court of Common Pleas of Somerset County, Pennsylvania,
No. 399 Civil 2008.......................................................... 40

CERTIFICATE OF ELECTRONIC FILING

CERTIFICATE OF BAR MEMBERSHIPS

CERTIFICATION OF COMPLIANCE PURSUANT TO FEDERAL
RULE OF APPELLATE PROCEDURE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

CASES                                                                    PAGE

Brzozowski v. Correctional Physicians Services, Inc., 360
F.3d 173 (3d Cir. 2004)............................................................ 3,20,34,35,
36,37

Coltec Indus. v. Hobgood, 280 F.3d 262 (3d Cir. Pa. 2002)........... 5,21

Continental Ins. Co. v. Schneider, Inc., 2002 Pa. Super. 323, 810
A.2d 127, 135 (Pa. Super. 2002) aff'd 582 Pa. 591, 873
A.2d 1286 (2005)................................................................... 30,33

Einhorn v. ML Ruberton Construction Co., 656 F.Supp. 2d 463
(D.N.J. 2009)........................................................................ 34

Fizzano Brothers Concrete Products, Inc. v. XLN, Inc., 973
A.2d 1016 (Pa. Super. 2009) allocator granted, 994 A.2d 1081
(Pa. May 19, 2010)................................................................ 11,31,32,36

Greenway Center, Inc. v. Essex Inc. Ins. Co., 2010 U.S. Appx.
LEXIS 5174 (3d Cir. March 11, 2010).................................... 32,33,36

Hayduk v. Workers' Compensation Appeal Board, 906 A.2d 622
(Pa. Cmwlth. 2006)............................................................... 33

HRW Systems, Inc. v. Washington Gas Light Co., 823 F.Supp. 318
(D. Md. 1993)....................................................................... 34

In re: Acushnet River & New Bedford Harbor, 712 F.Supp. 1010
(D. Mass. 1989)..................................................................... 34

IU N. Am., Inc. v. Gage Co., 2002 U.S. Dist. LEXIS 10275
(E.D. Pa. June 4, 2002).......................................................... 26

Johnson v. Corr. Physician Servs., 725 F. Supp. 2d 481
(E.D. Pa. 2010)..................................................................... 11,26,38

Kripp v. Kripp, 578 Pa. 82, 849 A.2d 1159 (2004)........................... 25

Light v. Miller, 303 Pa. Super. 527, 450 A.2d 51 (1982)................. 25

Mellon Bank, NA v. Aetna Business Credit, Inc., 619 F.2d 1001
(3d Cir. 1980)....................................................................... 24

CASES                                                                    PAGE

Morris v. Horn, 187 F.3d 333 (3d Cir. 1999)..................................    5,21

Nova Chemicals, Inc. v. Sekisur Plastics Co., Ltd., 579 3d 319
(3d Cir. 2009)...............................................................    24,25

Rego v. Arc Water Treatment Co. of Pennsylvania, 181 F.3d 396
(3d Cir. 1999)...............................................................    35

Saudi Am. Bank v. Shaw Group, Inc. (In re: Stone & Webster, Inc.),
2009 U.S. App. LEXIS 3689 (3d Cir. 2009).....................................    23

United States v. Atlas Minerals & Chems., 1995 U.S. Dist. LEXIS
13097 (E.D. Pa. Aug. 22, 1995)...............................................    34

United States v. Exide Corp., , 2002 U.S. Dist. LEXIS 3303
(E.D. Pa. Feb. 27, 2002).....................................................    34

Watson v. Prison Health Services, Inc., et al., C.C.P. Somerset Cty.,
No. 399 Civil 2008 (Jan 22, 2009)............................................    27

Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp.
Prides Litig.), 234 F.3d 166 (3d Cir. 2000)..................................    33

STATUTES

42 U.S.C. §1983..............................................................    6,20,28,35,
                                                                                36,38

42 U.S.C. §1988..............................................................    28

FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 59(b)........................................    37

Federal Rule of Civil Procedure 60(b)........................................    3,5,8,10,
                                                                                18,21,27,29,
                                                                                34,37,39

## CORPORATE DISCLOSURE

Prison Health Services, Inc. ("PHS") submitted its corporate disclosure statement at the time of the appeal.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The Court has previously decided an appeal in this case at Civil No. 08-3434, Darren Johnson v. Dennis Moyer, et al., (March 31, 2010)(the opinion is unreported). This Court upheld the granting of summary judgment to Dennis Moyer, M.D., Norman Stempler, M.D. and Commissioner Martin Horn. It reversed the decision of the Honorable Bruce W. Kauffman, Judge of the United States District Court for the Eastern District of Pennsylvania, denying Darren Johnson's ("Johnson") motion to reinstate Prison Health Services, Inc. ("PHS") as a defendant at Civil Action No. 00-0711. The Court of Appeals remanded the case to the district court to consider the merits of Johnson's arguments concerning PHS's liability under the asset purchase agreement.

COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did Prison Health Services, Inc. ("PHS") and Correctional Physicians Services, Inc. ("CPS") intend that the assumption of liability as contemplated by the asset purchase agreement extend to suits whose causes of action occurred before the execution of the agreement on March 29, 2000?

2.      Did the Magistrate Judge err in considering the issue of de facto merger when this Court in its remand order only asked that the trial court consider the merits of Johnson's argument concerning PHS's liability under the asset purchase agreement?

3.      Did the Magistrate Judge correctly determine that Johnson had failed to establish a de facto merger when he had not shown a continuity of ownership?

4.      Did the Magistrate Judge properly deny Johnson's motion for relief from judgment pursuant to Rule 60(b) of the Rules of Civil Procedure when Johnson presented only the issue of an express provision in a contract imposing successor liability and did not raise the issue of de facto merger?

5.      Did the Magistrate Judge correctly decide not to apply the test utilized by this Court for de facto merger in Brzozowski v. Correctional Physicians Services, Inc., 360 F.3d 173 (3d Cir. 2004) when this Court has only utilized that test in Title VII employment discrimination cases and when Johnson never raised this issue in his motion filed pursuant to Federal Rule of Civil Procedure 60(b) and when this Court in its remand order to the district court

-3-

instructed the district court to decide only whether the asset purchase agreement

imposed successor liability upon PHS?

## STANDARD OF REVIEW

A review of a decision by the District Court pursuant to Federal Rule of Civil Procedure 60(b) is generally reviewed for abuse of discretion. Coltec Indus. v. Hobgood, 280 F.3d 262 (3d Cir. Pa. 2002).  An abuse of discretion may be found when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.  Morris v. Horn, 187 F.3d 333, 341 (3d Cir. 1999).  An abuse of discretion may occur "when no reasonable person would adopt the district court's view," and this Court will not interfere with the District Court's exercise of discretion unless there is "a definite and firm conviction that the court . . . committed  a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.), 234 F.3d 166 (3d Cir. 2000).

## COUNTERSTATEMENT OF THE CASE

On December 11, 2000, Johnson, then a pro se prisoner, commenced this action pursuant to 42 U.S.C. §1983 alleging an Eighth Amendment violation of the United States Constitution based on delayed and inadequate treatment for a knee injury that doctors eventually diagnosed as a torn patellar tendon. (See App. 54, Doc. 15)[1]

PHS, Dennis Moyer, MD ("Dr. Moyer") and CPS filed a motion to dismiss the complaint. On March 13, 2002, the Honorable Bruce W. Kauffman, United States District Judge for the Eastern District of Pennsylvania ("Judge Kauffman") issued a memorandum and order dismissing: the Eighth Amendment claim against Horn, PHS, and CPS; Count IV of the complaint against PHS and CPS based on corporate negligence; and Count V of the complaint alleging intentional infliction of emotional distress against all of the defendants. Document 37. On March 26, 2002, Johnson filed a second amended complaint. Document 38. PHS, CPS and Dr. Moyer filed a motion to dismiss the second amended complaint. Document 46. Johnson filed a motion for leave to file a declaration in support of his second amended complaint. On January 24, 2003, the Court granted that motion and denied the motion to dismiss of Dr. Moyer, PHS and CPS as moot and directed that they file an answer to the third amended complaint. The Court directed the

---

[1] These citations are to the joint reproduced record presented in the first appeal in this case to this Court at No. 08-3434. PHS intends to submit that reproduced record under the appeal No. 10-3495 with a motion for permission to this Court to submit it as an appendix.

Clerk to docket the declaration as the third amended complaint.  Documents 67 and 68.

On August 27, 2003, the district court granted Commissioner Martin Horn's motion to dismiss.  (See App. 11- Document 84; App. 23-36).

Johnson contended in his third amended complaint that CPS had a contract with the Commonwealth of Pennsylvania Department of Corrections ("DOC") to provide medical care to inmates at its facilities, including the State Correctional Institution at Graterford ("SCI-Graterford").  He asserts that he received improper medical care at SCI-Graterford.  He also sued PHS, not as a successor in interest, but as a medical provider having signed the same contract for the same time period as CPS.  (Document 68; App. 65-82).

On January 19, 2005, Judge Kauffman granted in part and denied in part motions for summary judgment brought by all of the defendants.  He granted the motion for summary judgment of Dr. Moyer in its entirety.  He denied the motion for summary judgment of CPS as to the Eighth Amendment claim against it.  He dismissed PHS as a defendant writing:

> Plaintiff raises a[n]...Eighth Amendment claim against CPS and PHS.  As a preliminary matter, PHS claims that it had no contractual obligation to provide medical services to the inmates at SCI-Graterford until May, 2000. [Citations omitted].  Plaintiff has offered no evidence that PHS was involved with medical care at SCI-Graterford at that time, meaning it can bear no liability for the events giving rise to this suit.  Consequently, summary judgment must be granted in favor of PHS.

Memorandum and Order of January 19, 2005, docketed as Document 123; App.

37-52.

A year later Judge Kauffman permitted Johnson to obtain discovery from CPS.  Order of January 30, 2006, docketed at Document 133; App. 84.  At that time Judge Kauffman had appointed counsel for Johnson.  On March 1, 2006, Johnson's counsel filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(2) seeking the reversal of Judge Kauffman's order granting summary judgment to PHS.  Motion docketed at Document 135; App. 297-99.  In it he raised only one issue:  that he had received in discovery a copy of the Asset Purchase Agreement ("Agreement") between CPS and PHS, dated March 29, 2000, and allegedly discovered that under the agreement PHS assumed liability for cases such as his.  Id.

In an order dated October 5, 2006, Judge Kauffman denied Johnson's motion as untimely concluding that Rule 60(b) required the submission of the motion within one year of the entry of the judgment at issue.  Order docketed at Document 142; App. 53.  Judge Kauffman also addressed the merits of the motion in a footnote:

> Plaintiff argues that under [the Asset Purchase Agreement], PHS assumed the liabilities of CPS with respect to the provision of health care services to inmates.  Motion at 1.  However, the Agreement actually states that PHS assumes "all liabilities arising after the Closing Date with respect to the provision of services to inmates covered by the Pa. Contract or the NY Contract".  Agreement at p. 7 (emphasis added).  The events on which Plaintiff bases his claims occurred in 1999, prior to the Agreement's March 29, 2000, closing date.  Accordingly, Plaintiff has presented no new evidence demonstrating extraordinary circumstances

-8-

which would require this Court to vacate its prior
judgment.

Id.

By April 12, 2007, only CPS remained as a defendant in ths case. Judge
Kauffman scheduled trial for September 17, 2007. Order docketed as Document
144. On September 6, 2007, however, counsel for CPS moved to withdraw on the
basis that his client no longer existed as a functioning business and did not have
sufficient funds to pay him. Document 155; App. 312. Judge Kauffman granted
the motion and gave CPS time to find substitute counsel. Document 160.

No new counsel appeared. On March 31, 2008, Judge Kauffman granted
Johnson's motion for a default judgment against CPS. Document 165. Judge
Kauffman then referred the case to United States Magistrate Judge Jacob Hart
("Magistrate Judge Hart") for a trial on the issue of damages. Document 167.

On April 30, 2008, Magistrate Judge Hart entered an order scheduling a
bench trial for May 28, 2008. Document 170. He ordered copies of the order
served upon CPS principles, Kenan Umar and Emre Umar. See trial transcript at
3; App. 535. On May 28, 2003, only Johnson appeared for trial. Magistrate Judge
Hart proceeded to hear damage testimony from Johnson. On July 11, 2008,
Magistrate Judge Hart issued a final judgment in favor of Johnson in the amount
of $65,000. Documents 180 and 181; App. 85-99.

Johnson appealed to the United States Court of Appeals for the Third
Circuit challenging the granting of summary judgment in favor of Dr. Moyer,
Martin and Stempler and contending that Judge Kauffman had erred in granting

-9-

summary judgment in favor of PHS and in refusing to consider Johnson's motion to reconsider that ruling pursuant to Federal Rule of Civil Procedure 60(b)(2).

On April 22, 2010, the United States Court of Appeals for the Third Circuit issued its decision in <u>Johnson v. Stempler</u>, No. 08-3434 (April 22, 2010) upholding the granting of summary judgment to Dr. Moyer, Horn and Stempler and finding that Judge Kauffman should not have dismissed Johnson's motion for reconsideration regarding PHS as untimely. This Court reached no other issue. This Court concluded that Rule 60(b) applied only to final judgments. According to this Court, Judge Kauffman's order dismissing PHS failed to constitute a final order because it did not dispose of all issues as to all parties. Consequently, it was not appealable. This Court remanded the case for consideration of the merits to Johnson's argument regarding PHS's liability under the agreement.

At the request of the parties, Magistrate Judge Hart permitted PHS to file a supplemental response to Johnson's March 1, 2006 motion for reconsideration. Document 191. PHS filed its supplemental response on May 11, 2010. Johnson filed a reply memorandum of June 4, 2010. Documents 192 and 196. On June 10, 2010, Magistrate Judge Hart scheduled oral argument on the motion. Document 197. Argument occurred on June 29, 2010. Document 198.

On July 19, 2010, Magistrate Judge Hart entered an order considering Johnson's motion filed pursuant to Rule 60(b) on the merits. Magistrate Judge Hart concluded that the Asset Purchase Agreement by its provisions at paragraphs 3.1 and 3.3 failed to render PHS as a successor in interest to claims against CPS

that arose after the closing date of March 29, 2000.  Magistrate Judge Hart

concluded that Johnson's claim arose in 1999.  Consequently, Magistrate Judge

Hart concluded that PHS had no successor liability. See:  Johnson v. Corr.

Physician Servs., 725 F. Supp. 2d 481, 490 (E.D. Pa. 2010).

Magistrate Judge Hart also concluded that Johnson failed to establish a de

facto merger between CPS and PHS.  See:  Johnson v. Corr. Physician Servs., 725

F. Supp. 2d 481, 490 (E.D. Pa. 2010).  According to Magistrate Judge Hart, to

establish a de facto merger Johnson had to establish a continuity of ownership

between CPS and PHS.  Magistrate Judge Hart concluded that no such continuity

of ownership existed.  Magistrate Judge Hart relied upon the decision of the

Superior Court in Fizzano Brothers Concrete Products, Inc. v. XLN, Inc., 973

A.2d 1016 (Pa. Super. 2009) allocator granted, 994 A.2d 1081 (Pa. May 19, 2010).

Johnson has filed an appeal from Magistrate Judge Hart's decision to this Court.

This Court has directed that Johnson and PHS consider, among other issues in

their brief, whether the assumption of the liabilities contemplated by the Asset

Purchase Agreement extended to suits whose causes of action occurred before the

execution of the agreement.

## COUNTERSTATEMENT OF THE FACTS

The Commonwealth of Pennsylvania has incarcerated Johnson as an inmate

in its correctional system since 1992.  (App. 487).  On June 9, 1999, while

confined at the State Correctional Institution at Graterford ("SCI-Graterford)

Johnson injured his right knee while playing volleyball.  (App. 488).  Inmates took

-11-

him to the dispensary at SCI-Graterford.  A nurse came to the front door of the dispensary and had him carried up the steps to a wheelchair.  They then transported him to the infirmary.  (App. 488).

The nurse provided him with an ice pack and crutches.  She informed him to report to the infirmary the following day.  When Johnson reported the following day, Dr. Kaneria examined him and ordered x-rays.  (App. 488).  Dr. Kaneria told him to come back on June 14, 1999.  (App. 488).  Johnson had an x-ray of his knee done on June 11, 1999.  (App. 490).

On June 15, 1999, Dr. Moyer examined him when Johnson went to sick call. Johnson told Dr. Moyer that he still had a swollen knee.  This constitutes the first time that Dr. Moyer saw him.  He gave him a pass to report to the dispensary.  He indicated that he would tap his knee which he did.  (App. 491).  After Dr. Moyer performed the procedure Dr. Moyer told Johnson that he would examine him in a week.  (App. 491).

Johnson concedes that in his grievances he submitted no complaints about how Dr. Moyer performed the knee tap.  He only objected to the alleged misdiagnosis by Dr. Moyer and the delay in treatment.  (App. 492).

Dr. Moyer did another knee tap on June 22, 1999.  (App. 492).

On July 2, 1999, Dr. Kaneria gave Johnson Motrin and set up an examination for him with Dr. Baddick.  (App. 492).  He received a knee brace on August 4, 1999.  (App. 493).

Dr. Kaneria examined Johnson on July 7, 1999.  (App. 492).

-12-

Johnson saw Dr. Baddick on July 9, 1999. (App. 492). Dr. Baddick gave Johnson a knee immobolizer. (App. 492). Dr. Moyer referred Johnson to Dr. Stempler, an orthopedic surgeon. (App. 493). Dr. Stempler saw Johnson on July 15, 1999. (App. 493). Dr. Stempler told him that there was nothing wrong with his leg. (App. 500). He directed that he use the knee immobolizer and do leg exercises. He had an MRI the following day. (App. 500, 501). Johnson received physical therapy for several months. (App. 501).

On July 27, 1999, prison officials transported Johnson to Dr. Richard J. Mandel ("Dr. Mandel"), an orthopedic surgeon at Suburban General Hospital for treatment. (App. 495). According to Johnson, Dr. Mandel informed him that because of the delay in bringing him to Dr. Mandel he would need reconstructive surgery and a wire in his knee. (App. 496).

Johnson has produced no evidence at any time indicating that Dr. Moyer caused the delay.

Dr. Mandel indicated that he intended to perform the surgery immediately but that the guard from the Pennsylvania Department of Corrections stated that he had not been told to stay. The guard took him back to SCI-Graterford without the surgery occurring. (App. 496).

No evidence exists that Dr. Moyer had anything to do with this. Dr. Moyer had no control over when prison officials would transport inmates, including Johnson, for treatment by outside consultants or for surgery. Prison officials handled this independent of Dr. Moyer or Correctional Physician Services

-13-

("CPS"). CPS was a private corporation under contract to the Department of Corrections of the Commonwealth of Pennsylvania to provide certain medical services to inmates. (App. 423). CPS employed Dr. Moyer to provide medical services to inmates.

Dr. Mandel's chart note of July 27, 1999, made after his examination of Johnson, does not show that he viewed Johnson's condition as an emergency. Dr. Mandel wrote that he had discussed "treatment options" with Johnson and that he had told Johnson "some improvement may be achieved" through the use of surgery. Dr. Mandel told Johnson that there was no assurance of success even if the surgery was performed. Dr. Mandel wrote that "surgery will be scheduled in the future if approved." (App. 380, 424).

At no time did Dr. Mandel call Dr. Baddick or anyone else at CPS at SCI-Graterford and request emergency approval to perform the surgery on an immediate basis. (App. 424). As Medical Director at SCI-Graterford, Dr. Baddick had the authority to consider and approve such an immediate request from an outside physician. Had Dr. Mandel believed that it was medically necessary to perform the surgery on July 27, 1999 at a time when Johnson was already present in his office for examination, the proper procedure was for him to call the Medical Director, Dr. Baddick, and seek authorization verbally. (App. 424). Had he done this, Dr. Baddick would have approved the immediate performance of the procedure. (App. 425). Dr. Mandel placed no such call on July 27, 1999 or at any time seeking to perform surgery on Johnson on an emergency basis. (App. 425).

-14-

Johnson has contended that Dr. Mandel called CPS on July 27, 1999 but was denied approval for the surgery. He cites the third amended complaint at App. 70 and Johnson's deposition at App. 496 to support this. An examination of both documents shows that they do not support Johnson's contention that Dr. Mandel failed to obtain approval from CPS at that time. Johnson's third amended complaint asserts Dr. Mandel stated, "As a matter of fact, I'm going to call them [CPS and/or PHS] at the institution right now..." . He then came back and said, "Are you ready for the surgery? And the two guards that escorted [Johnson] there said, "We weren't scheduled to stay." (App. 70).

After supposedly calling CPS, if in fact it occurred, Dr. Mandel was ready to do the surgery. He declined to do so only when the guards told him that they had to leave.

Johnson's deposition testimony presents the same scenario. Johnson stated that Dr. Mandel told him he was going to call CPS "right now". Johnson does not know if he did it but he left the room. When he came back into the room Dr. Mandel said, "Are you ready for surgery?" Then the guard said he was not scheduled to stay, so he left. (App. 496). This fails to show that anyone at CPS refused to approve the surgery on July 27, 1999.

Johnson worked in the shoe factory at SCI-Graterford during the entire time of his injury. (App. 488). He operated the toe forming machine 6 ½ hours a day. That involved constant standing.

Dr. Moyer presented an expert report from Mendel Meller, M.D., Ph.D.

("Dr. Meller"). In his report he states that the standard of care does not require the use of anesthesia to tap a knee and that it is usually not used. (App. 420). Dr. Meller also stated in his report that the type of injury that Johnson had is often misdiagnosed initially when there is a painful swollen knee with symptoms being referred to the effusion or the bloody fluid and less attention is directed toward the site of the injury which is the disrupted tendon. (App. 420). Dr. Meller also indicated that despite the severity of the discomfort, Johnson's injury was not an emergency. Dr. Meller concluded that Dr. Moyer provided appropriate treatment to Johnson. (App. 420). Dr. Meller stated, "...there is nothing in the record which supports his allegations (Johnson's) of being harmed as a result of the two month interval until the surgery occurred or that he currently has any impairment or disability as a result." (App. 422).

At no time did PHS have any responsibility for the provision of medical services to Johnson or any other inmate at SCI-Graterford in 1999. PHS did not assume responsibilities for those inmates until May, 2000. That constitutes the effective date of the contract entered into between PHS and the Commonwealth of Pennsylvania Department of Corrections. (App. 171).

In his opposition to the motion for summary judgment of PHS and Dr. Moyer, Johnson did not contend that PHS had successor liability to CPS. Instead, he asserted that a contract existed between PHS and the Commonwealth of Pennsylvania which obligated PHS to provide medical care to him before May, 2000. He insisted that it applied to the events that had occurred to him in 1999.

-16-

He asserted that PHS had the ability to enter SCI-Graterford prior to May, 2000 to provide medical treatment to everyone there. No support exists for this proposition. (App. 174, 198).

Johnson had the ability to engage in discovery in this case prior to the appointment of counsel. He procured numerous declarations and affidavits from other inmates supporting his position. He had access to his medical records. He had the ability to produce the medical records of Dr. Mandel. He submitted these as exhibits in opposition to the motion for summary judgment of both CPS and Dr. Moyer. (App. 381, 384, 412, 413-417).

The agreement entered into between CPS and PHS for the purchase of various assets of CPS by PHS specifically provided for no successor liability of PHS under the circumstances of this case. Two sections of the agreement apply, 3.1 and 3.3. Section 3.1 of the agreement states:

> 3.1 Assumed Liabilities: As partial consideration for the purchase of the Assets, Purchaser hereby assumes the following liabilities (the "Assumed Liabilities") of Seller (I) all liabilities of Seller with respect to the Assumed Contracts to the extent arising after the Closing Date; (ii) all accrued current liabilities of Seller as of the Closing Date with respect to the Business with respect to payroll and accrued vacation pay to the extent attributable to any payroll period ending after the Closing Date that relates to the operation of the Business prior to and after the Closing Date or solely to the operation of the Business after the Closing Date; (iii) all liabilities arising after the Closing Date with respect to the provision of services to inmates covered by the Pa Contract or the NY Contract; and (iv) any liability of Seller for the NY Rebate, to the extent disclosed to Purchaser.

(App. 443).

Section 3.3 of the agreement states:

> 3.3. Excluded Liabilities. Except for the Assumed Liabilities, in no event shall Purchaser assume, agree to pay, satisfy or discharge or otherwise have any responsibility for any liabilities or obligations of Seller, and, without limiting the generality of the foregoing, Assumed Liabilities shall not include any liabilities or obligations in respect of the following: (I) Taxes (as Seller whatsoever which accrued at any time on or prior to the closing Date, whether or not such liability or obligation arises prior or subsequent to the Closing Date, including, without limitation, any liabilities with respect to payroll and accrued vacation pay and employee claims or benefits to the extent attributable to any payroll period ending prior to the Closing Date or ending after the Closing Date that relates solely to the operation of the Business prior to the Closing Date, distributions payable, debt or notes payable (including, without limitation, bank overdrafts), insurance related liabilities (whether known or unknown), including workers' compensation claims (asserted or unasserted, whether or not reported and whether or not reserved for, and including liability for the payment of deductible amounts), and litigation or claims (including, without limitation, contract claims, discrimination claims, EEOC claims and Medical Malpractice Claims (as hereinafter defined));...(Emphasis Added).

(App. 444).

In the Rule 60(b) motion submitted by Johnson's counsel, Johnson only seeks liability against PHS based on the asset purchase agreement. He does not submit any other theory of successor liability. (App. 297, 298).[2]

---

[2] Johnson did raise the issue of de facto merger in the Court of Appeals.

## SUMMARY OF THE ARGUMENT

No successor liability exists based on the provisions of the Asset Purchase Agreement entered into between two arms-length corporations, PHS and CPS. The Agreement specifically excludes an assumption of liability by PHS for litigation and claims including medical malpractice claims against the predecessor, CPS. PHS's assumption of liability under the Agreement for "liabilities arising after the Closing Date with respect to the provision of services to inmates covered by the Pa Contract," giving the terms their common dictionary meaning in order to best effectuate the intent of the parties, does not apply here because Johnson's claim arose in 1999, before the March 29, 2000 Closing Date.

Whether PHS contractually assumed liability is the only question properly before this Court because (1) the scope of this Court's directive on remand to the District Court was so limited; and (2) Johnson waived all other issues by failing to timely raise them in the lower court and/or in his prior appeal. However, even if they were not waived and were reviewable, no basis exists to find any abuse of discretion in the District Court's thorough and well-reasoned decision rejecting the existence of de facto successor liability. Pursuant to the law of Pennsylvania the absence of continuity of ownership results in the de facto merger doctrine never applying. Federal common law similarly views continuity of ownership as key to a finding of de facto successor liability. Here, no dispute exists that continuity of stock ownership is lacking, as the owners of CPS never became stockholders of PHS. The District Court properly rejected the test for successor liability under

Brzozowski v. Correctional Physician Services, Inc., 360 F.3d 173 (3d Cir. 2004)
as it arises from the particular policy concerns underlying Title VII and the
National Labor Relations Act.  It does not support such liability in a claim under
42 U.S.C.§ 1983 which requires a defendant's personal involvement in the
wrongful act.

ARGUMENT

A.    <u>Standard of Review.</u>

This Court reviews of a decision of the district court pursuant to Federal

Rule of Civil Procedure 60(b) for abuse of discretion. <u>Coltec Indus. v. Hobgood,</u>

280 F.3d 262 (3d Cir. Pa. 2002). An abuse of discretion may be found when the

district court's decision rests upon a clearly erroneous finding of fact, an errant

conclusion of law or an improper application of law to fact. <u>Morris v. Horn</u>, 187

F.3d 333, 341 (3d Cir. 1999). An abuse of discretion may occur "when no

reasonable person would adopt the district court's view," and this Court will not

interfere with the District Court's exercise of discretion unless there is "a definite

and firm conviction that the court . . . committed a clear error of judgment in the

conclusion it reached upon a weighing of the relevant factors." <u>Welch & Forbes,</u>

<u>Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.),</u> 234 F.3d 166 (3d Cir.

2000). No basis exists to find an abuse of discretion by the lower court in this

matter and the thorough and well-reasoned decision of Magistrate Judge Hart

should be affirmed.

B.    The Law of the Commonwealth of Pennsylvania Applies To
      The Interpretation of The Agreement Between Prison Health
      Services, Inc. and Correctional Physician Services, Inc. Because
      the Agreement Contains A Choice Of Law Provision Requiring
      <u>the Application of Pennsylvania Law.</u>

An examination of the Asset Purchase Agreement entered into between PHS

and CPS shows that it expressly provided for no successor liability concerning this

case. It only provided for successor liability for PHS for claims that arose after the

-21-

closing date of the Agreement. The closing date was March 29, 2000. The claim

of Johnson arose in 1999.

An examination of the Asset Purchase Agreement between PHS and CPS

shows that it expressly provided for no successor liability concerning this case.

The two relevant sections of the Agreement appear at paragraphs 3.1 and 3.3 and

state as follows:

> 3.1 Assumed Liabilities: As partial consideration for the purchase of the Assets, Purchaser hereby assumes the following liabilities (the "Assumed Liabilities") of Seller (I) all liabilities of Seller with respect to the Assumed Contracts to the extent arising after the Closing Date; (ii) all accrued current liabilities of Seller as of the Closing Date with respect to the Business with respect to payroll and accrued vacation pay to the extent attributable to any payroll period ending after the Closing Date that relates to the operation of the Business prior to and after the Closing Date or solely to the operation of the Business after the Closing Date; (iii) all liabilities arising after the Closing Date with respect to the provision of services to inmates covered by the Pa Contract or the NY Contract; and (iv) any liability of Seller for the NY Rebate, to the extent disclosed to Purchaser.

(App. 443).

Section 3.3 of the agreement states:

> 3.3. Excluded Liabilities. Except for the Assumed Liabilities, in no event shall Purchaser assume, agree to pay, satisfy or discharge or otherwise have any responsibility for any liabilities or obligations of Seller, and, without limiting the generality of the foregoing, Assumed Liabilities shall not include any liabilities or obligations in respect of the following: (I) Taxes (as Seller whatsoever which accrued at any time on or prior to the closing Date, whether or not such liability or obligation arises prior or subsequent to the Closing Date, including, without limitation, any liabilities with respect

> to payroll and accrued vacation pay and employee claims
> or benefits to the extent attributable to any payroll period
> ending prior to the Closing Date or ending after the
> Closing Date that relates solely to the operation of the
> Business prior to the Closing Date, distributions payable,
> debt or notes payable (including, without limitation,
> bank overdrafts), insurance related liabilities (whether
> known or unknown), including workers' compensation
> claims (asserted or unasserted, whether or not reported
> and whether or not reserved for, and including liability
> for the payment of deductible amounts), and litigation or
> claims (including, without limitation, contract claims,
> discrimination claims, EEOC claims and Medical
> Malpractice Claims (as hereinafter defined));...(Emphasis
> Added).

(App. 444).

Judge Kauffman and Magistrate Judge Hart correctly interpreted paragraph 3.1 of the agreement when they both stated that it provides that PHS assumes "all liabilities arising after the closing date with respect to the provision of services to inmates covered by the Pa contract or the NY contract." (App. 53, 443). The events on which Johnson bases his claim occurred in 1999 prior to the March 29, 2000 closing date. (App. 53).

Paragraph 3.3 specifically excludes all responsibility of PHS for any litigation no matter when it arises against CPS. It specifically, without limitation, encompasses medical malpractice claims in the exclusion. Thus, the Agreement contains an unambiguous statement of PHS having no responsibility for the case at issue here. No basis exists to impose successor liability upon PHS pursuant to the Agreement.

In <u>Saudi Am. Bank v. Shaw Group, Inc. (In re: Stone & Webster, Inc.)</u>, 2009

U.S. App. LEXIS 3689, *5-7 (3d Cir. 2009)[3] the United States Court of Appeals for the Third Circuit applying Delaware law held that the purchase agreement's definition of "excluded liability" had controlling importance in determining successor liability. That analysis should apply here.

Johnson contends that in a legal sense, no liability or obligation had accrued with respect to his treatment as of March 29, 2000, the closing date of the agreement. He maintains that the entire agreement is modified by the first words "except for the Assumed Liabilities", which is not the case. But, Johnson, through his counsel, contradicts this position. He states in his brief submitted after remand to the District Court, "Thus, at the time of the incidents in 1999, Mr. Johnson had accrued a cause of action, entitling him to bring an action in court, but liability had not yet arisen." Document 196, p. 10. This results in a strained construction of paragraph 3.1. To reach this interpretation this Court must disregard the basic principles of Pennsylvania contracts law.

The paramount goal of contract interpretation according to the courts of this Commonwealth consists of determining the intent of the parties. Nova Chemicals, Inc. v. Sekisur Plastics Co., Ltd., 579 3d 319, 323 (3d Cir. 2009). The strongest evidence of that intent comes from the wording of the agreement itself. Mellon Bank, NA v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) (applying Pennsylvania law). This Court interpreting Pennsylvania law interprets

---

[3] Because the decision is not reported, it is not controlling authority. PHS presents this decision for its persuasiveness only.

language in a contract by giving it its ordinary meaning. <u>Nova Chemicals</u>, <u>supra</u>, citing <u>Light v. Miller</u>, 303 Pa. Super. 527, 450 A.2d 51, 53 (1982). In providing its ordinary meaning, Pennsylvania courts often consult dictionaries for common usage. <u>Kripp v. Kripp</u>, 578 Pa. 82, 92, 849 A.2d 1159, 1162 (2004).

Magistrate Judge Hart correctly consulted a dictionary of general usage, the Merriam-Webster's Dictionary to define liability as it appears in Section 3.1. That dictionary defines liability as: "the quality or state of being liable" and "liable" as "obligated according to the law or equity; responsible." <u>Http://www.nicrriam-webster.com/dictionary/liability</u> and <u>liable</u>. Johnson has presented the definition of liability from Black's Law Dictionary which defines liability as "the quality or state of being legally obligated or accountable." Johnson argues that no liability occurred until he obtained a judgment against CPS on July 11, 2008. Under Johnson's interpretation, PHS would have liability for actions that an inmate had years before the Agreement of March 29, 2000 if the inmate obtained a judgment after that date. Thus, you could have a situation where an inmate experienced an injury in 1997 but failed to obtain judgment until 2015. The parties to the Agreement never intended such an absurd result.

Magistrate Judge Hart correctly embraced the definition of liability set forth in the Merriam-Webster's Dictionary and correctly rejected the definition of liability submitted in Black's Law Dictionary. No indication exists that the parties intended the term liability to have anything other than its common everyday meaning. They did not mean to embrace a technical definition of liability as set

forth in a dictionary for professionals. Under Pennsylvania law, an agreement to indemnify another for losses due to the indemnitee's own negligence must be expressed "in clear and unequivocal language." IU N. Am., Inc. v. Gage Co., 2002 U.S. Dist. LEXIS 10275 (E.D. Pa. June 4, 2002) (an agreement to indemnify "from any and all liability for claims for loss, damage, injury or other casualty to persons or property" was not sufficiently explicit as to transfer liability to the buyer of a company engaged in sale of asbestos products).

As Magistrate Judge Hart concluded, if the word liability has the meaning proposed by Johnson the result is untenable. If paragraph 3.1 assumes liability for judgments arising after the closing date regardless of when the claim arose, then PHS would be named as a defendant in a law suit addressing actions taken by CPS before the closing date but only in a separate action, filed after the entry of the first judgment. The first trial could be completely useless. CPS would probably permit a default entry against it. PHS, as a non-party, would have no ability to assert a defense on the merits of the case. A double trial would always be necessary. See opinion of Magistrate Judge Hart, Johnson v. Corr. Physician Servs., 725 F. Supp. 2d 481, 490 (E.D. Pa. 2010); Document 199, p. 8.

The parties never intended such a result. As Magistrate Judge Hart indicated, it benefits neither of them. They intended to use the word liability in the broader Merriam-Webster sense referring to the time at which actions were taken resulting in a liability. This leads to a more logical conclusion that PHS agreed to assume liability for services arising under the contract CPS had made

with the DOC but only when PHS was actually involved in the behavior giving rise to the liability, that is action after the closing date.

Watson v. Prison Health Services, Inc., et al., C.C.P. Somerset Cty., No. 399 Civil 2008 (Jan 22, 2009) dealt with the identical issue before this Court (Copy attached hereto at Appendix "A"). Watson had obtained a judgment against CPS based on a medical malpractice claim he had against CPS. He filed a complaint to hold PHS responsible for that judgment based upon the asset purchase agreement. The Court granted judgment on the pleadings to PHS based in part on the language of the asset agreement. The Honorable David C. Klementik ("Judge Klementik"), Judge of the Court of Common Pleas of Somerset County, indicated that the agreement between PHS and CPS included a section entitled "Excluded Liabilities" which specifies that PHS did not assume any of CPS's litigation or claims specifically including those relating to medical malpractice. The Court indicated that there was nothing to show that this particular transaction amounted to a consolidation or merger. That analysis applies here and constitutes persuasive authority. See Appendix "A".

Johnson now contends in his brief before this Court that he did not have a cause of action pursuant to 3.1 until he had exhausted his administrative remedies. Johnson never raised this issue in his Rule 60(b) motion. He never raised that issue in his first appeal to this Court. He never raised that issue in his supplemental brief in front of Magistrate Judge Hart. He submits it for the first time now in his second appeal to this Court. Neither Judge Kauffman nor the

original panel of this Court to hear the appeal nor Magistrate Judge Hart ever had a chance to consider the exhaustion argument of Johnson. This Court has repeatedly concluded that the failure to raise an issue below waives the issue on appeal. Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994). No basis exists to excuse the waiver that has occurred here. On each occasion when he failed to raise the issue he had the benefit of the advice of counsel.

Even if the Court contends that Johnson has not waived this argument it fails to affect the interpretation of paragraphs 3.1 and 3.3 of the Agreement. It does not change the general meaning of liability. It does not allege the admission of Johnson in the brief that he submitted with the advice of counsel to Magistrate Judge Hart in which he admitted that he had at the time of the incident in 1999 accrued a cause of action entitling him to bring an action in court. Document 196, p. 10.

C.   Pennsylvania Law Applies to the Determination of Whether Johnson Has Set Forth a Claim for De Facto Merger.

42 U.S.C. §1988 provides congressional guidance as to when the law of the state in which the court sits should be applied to a claim based on 42 U.S.C. §1983. §1988 provides in relevant part:

Proceedings in vindication of civil rights.

Applicability of statutory and common law. The jurisdiction . . .conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, . . . shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient

in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts ....

Here, utilizing Pennsylvania law is not inconsistent with the Constitution or laws of the United States. Consequently, Pennsylvania law applies to the standard for a de facto merger.

D.    Johnson Has Waived The Issue Of De Facto Merger Because He Never Raised It In His Motion Based On Federal Rule Of Civil Procedure 60(b).

This Court has repeatedly concluded that the failure to raise an issue below waives the issue on appeal. Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994). Johnson's failure to raise this issue in the District Court results in its having been waived.

E.    This Court Did Not Authorize The District Court To Decide The De Facto Merger Issue In Its Remand Order.

On April 22, 2010, this Court issued its decision in Johnson v. Stempler, No. 08-3434 (April 22, 2010). It directed the district court to consider the merit of Johnson's argument concerning PHS's liability under the Agreement between CPS and PHS. It did not direct the district court to consider any other issue. Consequently, the district court had no authority to render any opinion on the de facto merger issue.

F.    Johnson Failed To Meet His Burden Concerning A De Facto Merger Since He Has Not Shown A Continuity Of Ownership.

The Pennsylvania courts have recognized five exceptions to the general rule that when one company sells all or substantially all of its assets to another company the acquiring company is not responsible for the debts of the transferor simply because it purchased the transferor's property. Continental Ins. Co. v. Schneider, Inc., 2002 Pa. Super. 323, 810 A.2d 127, 135 (Pa. Super. 2002) aff'd 582 Pa. 591, 873 A.2d 1286 (2005). The Pennsylvania courts recognize five exceptions to this general rule of non successor liability: (1) the purchaser expressly and implicitly agreed to assume liability; (2) the transaction amounted to a consolidation or de facto merger; (3) the purchasing corporation was merely a continuation of the selling corporation; (4) the transaction was fraudulently entered into to escape liability; or (5) the transfer was without adequate consideration and no provisions were made for creditors of the selling corporation. Schneider, supra, 582 Pa. at 599-600, 873 A.2d at 1291. PHS has already discussed the first exception. The only other exception to the general rule raised by Johnson consists of a claim of de facto merger.

In determining if a de facto merger has occurred, Pennsylvania courts consider four factors: (1) continuity of ownership; (2) cessation of the ordinary business by and dissolution of the predecessor as soon as practicable; (3) assumption by the successor of liability ordinarily necessary for uninterrupted continuation of the business; and (4) continuity of the management, personnel, physical location, and the general business operation. Continental Ins. Co. v. Schneider, Inc., 2002 Pa. Super. 323, 810 A.2d 127, 135 (2002), aff'd 582 Pa.

591, 873 A.2d 1286 (2005). In <u>Schneider</u>, the Superior Court of the Commonwealth of Pennsylvania concluded that continuity of ownership constituted a key factor in the de facto merger analysis. In fact, the disposition of the Superior Court in <u>Schneider</u> compels precisely the conclusion that it is the key factor without which a de facto merger claim fails to exist. The Superior Court concluded that so long as an issue of material fact remained with regard to continuity of ownership, summary judgment could not be granted on the de facto merger claim. <u>Id.</u>, 810 A.2d at 135. The Superior Court reached this conclusion even though the other three factors in the analysis for de facto merger were found to exist.

In <u>Fizzano Bros. Concrete Prods. v. XLN, Inc.</u>, 973 A.2d 1016 (Pa. Super. 2009) allocator granted 994 A.2d 1081 (Pa. May 19, 2010), the Superior Court of Pennsylvania removed all doubt as to the key importance of continuity of ownership. The Court held that pursuant to the law of the Commonwealth of Pennsylvania the absence of continuity of ownership resulted in the de facto merger doctrine never applying. It stated that continuity of ownership constitutes a key element that must exist in order to apply the de facto merger doctrine. The Superior Court of Pennsylvania in <u>Fizzano</u> stated:

> With regard to continuity of ownership, the trial court acknowledged that none of the owners of XLN became owners of XLNT. Trial Court Opinion, 11/7/07 at 17. <u>This finding, by itself, should have ended the trial court's consideration of XLNT's potential successor liability.</u> Continuity of ownership is a key element that must exist in order to establish the de facto merger doctrine, since in the absence of a transfer of stock for assets the

> consequence of the transaction is not the functional
> equivalent of a merger.  Instead, where there is no
> continuity of ownership, the transaction is merely an
> arm's length transaction between two corporations and
> not in any sense a merging of two corporations into one.

Fizzano, supra, 973 A.2d at 1020 (emphasis added).

The Supreme Court's granting of allocator in Fizzano, supra, does not undermine its persuasiveness.  As Magistrate Judge Hart concluded the Superior Court's reasoning is compelling and it represents Pennsylvania law as it now stands.

Here, no continuity of stock ownership occurred.  The owners of CPS never became owners of PHS.  They were not majority stockholders of PHS.  They were not minority stockholders of PHS.  No identity of stockholders or owners existed.  No dispute exists as to this.  Johnson concedes this.

In Greenway Center, Inc. v. Essex Inc. Ins. Co., 2010 U.S. Appx. LEXIS 5174 (3d Cir. March 11, 2010) the United States Court of Appeals for the Third Circuit held that the approach of the Superior Court in Fizzano Bros. Concrete Prods., supra, 973 A.2d at 1020, requiring that the owners of a transferring corporation and the owners of the purchasing corporation be the same for de facto merger to exist, constituted a binding statement of the law of the Commonwealth of Pennsylvania.  The Court of Appeals applied that rule to the matter before it.  The Court of Appeals held that the district court had erred in concluding that a de facto merger occurred between GCI and Winco because there was no evidence of continuity of ownership.  GCI never purchased any of Winco's assets and no stock

-32-

was ever transferred from Winco shareholders to GCI shareholders.[4]

Thus, Johnson has failed to establish the key element necessary for a de facto merger, continuity of ownership.

In Watson v. Prison Health Services, Inc., et al., C.C.P. Somerset Cty, No. 399 Civil 2008, Judge Klementik rejected the contention that PHS was merely a continuation of CPS. See Appendix "A". The Court relied on the decision of the Commonwealth Court of Pennsylvania in Hayduk v. Workers' Compensation Appeal Board, 906 A.2d 622, 632 (Pa. Cmwlth. 2006) and Continental Insurance Co. v. Schneider, Inc., 582 Pa. 59, 1873 A.2d 1286 (2005). The Commonwealth Court in Hayduk upheld the Board's decision that the new employer was not a successor to the former employer even though "the sale of productive assets took Princeton [the former employer] out of business in the Commonwealth of Pennsylvania, the business operation continued without substantial interruption, the products and contracts were the same before and after the sale, and virtually all personnel were the same before and after the sale." 906 A.2d at 633.

In Watson, supra, Judge Klementik, relying on the decision in Hayduk, supra, concluded:

> Therefore, we too find that the current situation does not amount to a continuation of the selling corporation.

See copy attached hereto as Appendix "A".

---

[4] Although the decision of the Court in Greenway Center, Inc., supra, does not constitute binding authority because the Court did not publish its decision, PHS presents it as persuasive authority.

-33-

If federal common law applies to determine the existence of a de facto merger, Johnson still fails to meet his burden. Although cases pursuant to federal common law do not make continuity of ownership essential they consider it a very significant factor under federal common law.

In <u>Einhorn v. ML Ruberton Construction</u> Co., 656 F.Supp. 2d 463, 467 (D.N.J. 2009), the Court found no de facto merger in an ERISA case where continuity of ownership did not exist, calling continuity of ownership "often critical". In <u>United States v. Exide Corp.</u>, , 2002 U.S. Dist. LEXIS 3303 (E.D. Pa. Feb. 27, 2002), the court found de facto merger in a CERCLA case where there was continuity of ownership. In <u>United States v. Atlas Minerals & Chems.</u>, 1995 U.S. Dist. LEXIS 13097, *258 (E.D. Pa. Aug. 22, 1995), the court found no de facto merger in a CERCLA case without continuity of ownership. See <u>HRW Systems, Inc. v. Washington Gas Light Co.</u>, 823 F.Supp. 318 (D. Md. 1993) (the Court stated that the "most critical element of the test is continuity of ownership"); <u>In re: Acushnet River & New Bedford Harbor</u>, 712 F.Supp. 1010, 1015 (D. Mass. 1989) (calling continuity of ownership a "key requirement").

G.    Johnson has waived his argument concerning the applicability of <u>Brzozowski v. Correctional Physician Services, Inc.</u>, 360 F.3d 173 (3d Cir. 2004) Since He Never Raised It In His Rule 60(b)(2) Motion.

Johnson never raised the <u>Brzozowski</u> issue in his original Rule 60(b)(2) motion filed on March 1, 2006. The motion only discussed the Asset Purchase Agreement. Consequently, he has waived the issue. He may not raise it for the first time in an appellate court.

-34-

H.     This Court Did Not Authorize The District Court To Consider
       The Test Utilized In <u>Brzozowski v. Correctional Physician Services,
       Inc., 360 F.3d 173 (3d Cir. 2004)</u> On Remand.

In its remand order and the memorandum explaining that order issued in this

case at No. 08-3434 on April 22, 2010 this Court directed the district court to

consider the merits of Johnson's argument concerning PHS's liability under the

Agreement.  The district court only had the ability to determine the meaning of the

Agreement as it related to successor liability.  Consequently, Magistrate Judge

Hart acted correctly in rejecting any argument pursuant to <u>Brzozowski v.

Correctional Physician Services, Inc.</u>, 360 F.3d 173 (3d Cir. 2004).

I.     The Test Utilized By This Court in <u>Brzozowski v. Correctional
       Physician Services, Inc.</u>, 360 F.3d 173 (3d Cir. 2004)
       Fails To Apply Here.

The decision of the United States Court of Appeals in <u>Brzozowski v.

Correctional Physicians Services, Inc.</u>, 360 F.3d 173 (3d Cir. 2004) fails to support

the position of Johnson here.  In that case, the United States Court of Appeals

dealt with the agreement that is at issue between CPS and PHS; the asset purchase

by PHS of certain assets of CPS.  But the Court based its decision, finding that

successor liability may exist, based upon a different statute than 42 U.S.C. §1983.

There, the plaintiff had invoked a Title VII claim.  The Court of Appeals for the

Third Circuit, in its previous decision in <u>Rego v. Arc Water Treatment Co. of

Pennsylvania</u>, 181 F.3d 396 (3d Cir. 1999), held that in employment

discrimination cases, the doctrine of successor liability applies where the assets of

the defendant employer are transferred to another entity.  The Court of Appeals

based its decisions in both <u>Brzozowski</u> and <u>Rego</u> upon the policy interests that Congress sought to achieve in enacting Title VII.

Those policy interests did not motivate Congress when it enacted 42 U.S.C. §1983. It had very different policy objections. Courts interpreting Title VII have permitted respondeat superior liability. They have not insisted on the personal involvement required by those same courts for a claim based on 42 U.S.C. §1983.

The Court of Appeals in <u>Brzozowski</u> and <u>Rego</u> expressly did not apply the law of the Commonwealth of Pennsylvania. The Court of Appeals employed a different test than utilized by courts interpreting Pennsylvania law. The Court only relies upon three factors for making its successor liability determination. Those factors are: (1) whether there has been continuity in the operations and the work force of the successor and predecessor; (2) whether the predecessor is able to provide the relief requested; and (3) whether there was notice to the successor employer of the predecessor's legal obligation. <u>Brzozowski</u>, <u>supra</u>, 360 F.3d at 178 (3d Cir. 2004). The test does not include specific factors for de facto merger and does not require specifically continuity in ownership. Courts interpreting Pennsylvania law, including the United States Court of Appeals for the Third Circuit, have held that continuity in ownership constitutes a crucial factor without which a de facto merger cannot exist. <u>Fizzano Bros. Concrete Prods. v. XLN, Inc.</u>, 973 A.2d 1016, 1020 (Pa. Super. 2009), allocator granted 994 A.2d 1081 (Pa. May 19, 2010); <u>Greenway Center, Inc. v. Essex Insurance Co.</u>, 2010 U.S. Appx. LEXIS 5174 (3d Cir. Pa. March 11, 2010).

In addition, Magistrate Judge Hart correctly noted that the decision in Brzozowski v. Correctional Physicians Services, Inc., 360 F.3d 173 (3d Cir. 2004) fails to constitute a basis for relief pursuant to a Rule 60(b)(2) motion. That motion depends upon the existence of newly discovered evidence that could not have been discovered by exercising due diligence in enough time to move for a new trial under Federal Rule of Civil Procedure 59(b). The Brzozowski case fails to constitute such evidence. This Court decided it on February 23, 2004, several months before Johnson filed his response to PHS's motion for summary judgment on April 20, 2004. Document 101. In any event, Brzozowski did not make new law as it used the test previously announced in Rego, supra.

Johnson had the ability to raise the issue in his response to PHS's motion for summary judgment. That fails to constitute new evidence as required by Rule 60(b)(2).

This Court in Brzozowski based its decision on principles of labor and employment law. This Court noted that Title VII was molded to a large extent on the National Labor Relations Act including its relief provisions. 360 F.3d at 177. It declined to apply the traditional de facto merger test because the Supreme Court had expanded the common law rule in the field of labor relations. This Court declined to follow federal common law as it pertains to successor liability because of the strong connection between Title VII and the National Labor Relations Act.

Magistrate Judge Hart correctly concluded, "Thus, the Brzozowski decision was founded on a well-established rule permitting a finding of liability against a

successor in interest in employment liability cases, including those brought under Title VII. For this reason, it is not persuasive in a §1983 case such as this, where there is very little applicable precedent, and certainly none suggesting that anything other than a common-law rule of successor liability should be applied." Johnson v. Corr. Physician Servs., 725 F. Supp. 2d 481, 490 (E.D. Pa. 2010); Document 199, p. 14.

J.    Johnson's Contention That The District Court Incorrectly Decided The Summary Judgment Motion Against PHS In 2005 Because Of The Wrong Closing Date Is Not Before This Court.

Johnson now attempts to raise an issue before this Court that he never submitted to Magistrate Judge Hart after the remand by the United States Court of Appeals for the Third Circuit of his first appeal. Johnson needed to present this issue to the United States Court of Appeals for the Third Circuit in his brief in support of his first appeal. He failed to do this.

In the remand order, this Court only directed the district court to decide the merits of Johnson's argument concerning PHS's liability under the Asset Purchase Agreement. That failed to provide the district court with the power to determine whether it incorrectly decided the summary judgment motion of PHS in January, 2005. Johnson never presented the issue on remand to Magistrate Judge Hart, either.

An examination of the summary judgment motion of PHS shows that PHS did not present the wrong closing date. Instead, PHS submitted that pursuant to the Agreement with the DOC, PHS did not undertake providing healthcare to

inmates at SCI-Graterford until May 1, 2000. The date of the Asset Purchase Agreement has nothing to do with when PHS started providing medical services at SCI-Graterford. PHS provided a verification to support its motion for summary judgment setting forth when it began to provide medical services. PHS provided no inaccurate information to the district court in 2005 in support of its motion for summary judgment.

## CONCLUSION

In the light of the foregoing, Prison Health Services, Inc., respectfully requests that this Court affirm the decision of the United States Magistrate Judge Jacob P. Hart denying Darren Johnson's motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(2).

GOLD & FERRANTE, P.C.

BY: _____/S/ ALAN S. GOLD_____
ALAN S. GOLD
Attorney for Appellee,
Prison Health Services, Inc.

261 Old York Road, Suite 526
Jenkintown, PA 19046
(215)885-1118

*1291*

| | |
|---|---|
| EUGENE WATSON, | )  IN THE COURT OF COMMON |
| | )  PLEAS OF SOMERSET COUNTY, |
| Plaintiff, | )  PENNSYLVANIA |
| | ) |
| vs. | ) |
| | )  NO. 399 CIVIL 2008 |
| | ) |
| PRISON HEALTH SERVICES, INC. and | ) |
| PENNSYLVANIA DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| | ) |
| Defendants | ) |
| | ) |
| | ) |
| | ) |

For Defendant Prison Health Services:    Alan S. Gold, Esq.

For Defendant PA DOC:    Vincent R. Mazeski , Esq.

For Plaintiff:    Eugene Watson, pro se

Argument:    December 3, 2008

<u>MEMORANDUM</u>

This case comes before us on Defendant Prison Health Services Motion for Judgment on the Pleadings and Defendant Pennsylvania Department of Corrections Preliminary Objections.  For the reasons set forth below Defendant Prison Health Services Motion for Judgment on the Pleadings is GRANTED.  Likewise, Defendant Pennsylvania Department of Corrections Preliminary Objections are SUSTAINED.

This dispute arises from a dispute between the plaintiff, Eugene Watson ("Plaintiff,") an inmate currently at SCI-Laurel Highlands and Prison Health Services Inc. ("PHS") and the Pennsylvania Department of Corrections ("PA DOC,") as co-defendants.  The dispute centers on the March 2000 sale of assets from Correctional Physician Services ("CPS") to PHS.

APPENDIX A

According to the facts set forth in the complaint, for several years prior to 2000, CPS provided medical treatment to inmates at SCI-Graterford, including Plaintiff, pursuant to a written contract with PA DOC. (Amended Complaint ¶ 4). CPS began having financial problems and became insolvent. (Amended Complaint ¶ 5).

On March 29, 2000, CPS, PHS, Ken Umar and Emre Umar entered into a written asset purchase agreement ("APA") wherein CPS sold its contracts with the PA DOC and the NY State Department of Correctional Services to PHS for $14,000,000.00. (Amended Complaint ¶ 6). Under the terms of the APA, $500,000 was paid to Ken Umar and $500,000 was paid to Emre Umar, as the sole 50% shareholders of CPS. The remaining $13,000,000 balance was to be used to pay other CPS debts, which at the time of the APA, PHS knew exceeded $13,000,000.00. (Amended Complaint ¶ 7). The $13,000,000.00 was exhausted in August 2000, leaving many creditors unpaid either in whole or in part. (Amended Complaint ¶ 11).

The APA stated that PHS "assumes and agrees to pay the assumed CPS liabilities to the extent such obligations (i) accrue after the closing date, (ii) are not required to be performed as a result of CPS's breach of any contract or its wrongful or negligent acts or omissions, or its violations of the law, occurring on or prior to the closing date." (Amended Complaint ¶ 8). The APA also stated "PHS did not assume any liabilities for CPS claims that accrued at any time on or prior to the closing date, including litigation claims." (Amended Complaint ¶ 8).

Plaintiff filed a civil action against CPS on September 18, 2000 alleging malpractice by its doctors during the 1990's. Ken Umar was personally served by a Deputy Sheriff on November 16, 2000. (Amended Complaint ¶ 12). Default judgment was entered for the plaintiff against CPS on February 27, 2001 in the amount of $210,000. (Amended Complaint ¶ 13). On May 5, 2001 the plaintiff garnished the CPS bank account at First Union National

63

Bank, which contained $416.42, but was otherwise unable to collect any part of the judgment due to CPS being insolvent. (Amended Complaint ¶ 14.)

On August 1, 2001, CPS filed a petition to open or vacate the judgment but was denied relief. The petition revealed (1) that PHS had purchased the SCI-Graterford contract from CPS in May 2000; (2) at the time of services of the complaint CPS had essentially stopped operations; (3) at the time of service CPS had at best a skeleton staff; (4) CPS no longer operated any contract at any prison; and (5) CPS ceased to have an office at 1787 Sentry Parkway West, Blue Bell, PA. (Exhibit G of the Amended Complaint).

On December 18, 2007, another inmate at SCI-Laurel Highlands showed the plaintiff a 2004 United States District Court case captioned *Brzozowski v. CPS*. The factual part of this case tells about the $14,000,000 payment by PHS to CPS and the payments by CPS of $500,000 each to Ken Umar and Emre Umar. (Amended Complaint ¶ 17-18).

Thereafter, the plaintiff filed the instant action against PHS and the PADOC. The plaintiff claims a violation of the Uniform Fraudulent Transfer Act by PHS and the PA DOC and Successor Liability against PHS. PHS has filed a Motion for Judgment on the Pleadings and the PA DOC has filed Preliminary Objections to the plaintiff's complaint.

## I. Prison Health Services Motion for Judgment on the Pleadings

Pennsylvania Rule of Civil Procedure 1034 provides "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings. Pa. R.Civ.P. 1034(a). In the instant case, Defendant-PHS has moved for judgment on the pleadings.

When considering a motion for judgment on the pleadings, the trial court "should confine itself to the pleadings themselves and any documents or exhibits properly attached to

64

them." *Kelly v. Nationwide Ins. Co.*, 606 A.2d 470, 471 (Pa. Super. 1992).    "The trial court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings by the party against whom the motion is filed, considering only those facts which were specifically admitted." *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565 (Pa. Super. 2007).

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. *Dunn v. Board of Property Assessment, Appeals and Review of Allegheny County*, 877 A.2d 504, 510 (Pa. Commw. 2005).

### a.  Uniform Fraudulent Transfers Act

Defendant PHS's first assertion in its Motion for Judgment on the Pleadings is that the plaintiff's claim under the Uniform Fraudulent Transfers Act ("UFTA") is barred by the applicable statute of limitations set forth under 12 Pa.C.S.A. § 5109.  Section 5109 of the UFTA provides:

> "A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:
> (1) under section 5104(a)(1) (relating to transfers fraudulent as to present and future creditors), within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant" 12 Pa.C.S.A. § 5109(1).

Plaintiff, at the time of the transfer between CPS, the Umars, and PHS, was a future creditor, as he had not yet began his course of legal action against CPS which resulted in the default judgment against CPS.  As a future creditor, the plaintiff had to bring this action within four years of the transfer or within one year after the transfer was or could reasonably have

*65*

been discovered through the exercise of reasonable diligence by the plaintiff. *K-B Building, Co. v. Sheesley Construction, Inc.*, 833 A.2d 1132, 1136 (Pa. Super 2003).

In *K-B Building Co.*, K-B appealed the decision of the trial court to grant summary judgment for Sheesley on the grounds that the statute of limitations in section 5109 of the UFTA had expired. On appeal, K-B argued that it did not discover the transfers at issue, which began in 1994, until February 2001, when it was reviewing correspondence related to the stock scheme. K-B therefore argued that the trial court erred in determining that it should have known of the transfers by September 1, 2000. The defendants alleged that K-B engaged in extensive discovery pursuant to previous litigation, which discovery would have disclosed the subject transfer as early as 1994 and no later than November 1997.

In *K-B Building Co.*, the Superior Court reversed and remanded, holding that the documents of record failed to demonstrate that the transaction was completed in 1994 and that the record, viewed in light most favorable to K-B, also fails to establish when K-B knew or should have known of the subsequent fraudulent transfers that were not a matter of public record. Consequently, a question of material fact exists as to that key issue and the grant of summary judgment could not be sustained. However, the court did note that with appropriate documentation provided in the record, dismissal based on the application of the statute of limitations may be appropriate.

The pleadings of the instant case consist of an amended complaint, an answer to the amended complaint with new matter, answer to new matter, preliminary objections and the relevant documents attached thereto. The specific facts relevant to the statute of limitations for UFTA purposes are set forth below.

66

The plaintiff's complaint states "the transaction by which PHS paid $14,000,000.00 to CPS which in turn paid a total of $1,000,000.00 to the Umars, was a transfer within the definition of a transfer in 12 PA.C.S.A. § 5101(b). Plaintiff asserts that the $1,000,000.00 transfer made by CPS to the Umars was fraudulent as to the unsecured inmate creditors of CPS and other unsecured CPS creditors." (Amended Complaint ¶ 25).

The $1,000,000.00 transfer to the Umars occurred on or about March 29, 2000, the date of the APA. With the four-year window long closed, Plaintiff asserts that he is bringing his UFTA action "within one year after the transfer was or could reasonably have been discovered by the claimant." Plaintiff asserts that the first time he discovered the fraudulent $1,000,000.00 transfer to the Umar's was on December 18, 2007 when another inmate showed Plaintiff a 2004 United States District Court case captioned *Brzozowski v. CPS*, which discussed the $14,000,000.00 APA and the $1,000,000.00 transfer to the Umar's.

Defendant PHS's Motion for Judgment on the Pleadings asserts that after the plaintiff became aware that CPS sold its contract rights to PHS, via CPS's 2001 petition to open judgment, the plaintiff failed to exercise any diligence or conduct any discovery and, instead, waited almost seven years to bring his claim. Plaintiff argues the first time the fraudulent transfer could have been discovered was December 18, 2007.

The questioned that must be answered is whether the information divulged in the CPS petition to open judgment was enough to put the plaintiff on notice, such that the exercise of reasonable diligence the plaintiff could have discovered the allegedly fraudulent $1,000,000.00 transfer.

The Pennsylvania Supreme court has explained that, reasonable diligence is what is expected from a party who has been given reason to inform himself of the facts upon which his

*67*

right to recovery is premised. *Drelles v. Manufacturers Life Insurance Company*, 881 A.2d 822, 831 (Pa. Super 2005). Reasonable diligence comprises a "reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." As the Supreme Court stated in *Fine v. Checcio*, "there are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." *Fine v. Checcio*, 870 A.2d 850, 858 (2005); *Crouse v. Cyclops Industries*, 745 A.2d 606, 611 (2000). "Reasonable diligence is not a subjective standard. A party is not under an absolute duty to discover the cause of his injury; rather he must exercise only that level of diligence that a reasonable person would employ under the facts and circumstances presented in a particular case." *Drelles v. Manufacturers Life Insurance Company*, 881 A.2d 822, 841 (Pa. Super 2005).

The undisputed facts show that the plaintiff, holding his $210,000.00 judgment against CPS, was made aware via the 2001 petition to open judgment (1) that PHS had purchased the SCI-Graterford contract from CPS in May 2000;  (2) at the time of service of the complaint CPS had essentially stopped operations; (3) at the time of service CPS had at best a skeleton staff; (4) CPS no longer operated any contract at any prison; and (5) CPS ceased to have an office at 1787 Sentry Parkway West, Blue Bell, PA. (Exhibit G of the Amended Complaint). It is clear that from the time the petition to open judgment was denied until December 18, 2007, the plaintiff exercised no amount of diligence in determining whether he had a cause of action against CPS, PHS, or the Umar's based on the May 2000 sale between CPS and PHS.

Clearly the plaintiff was made aware of the sale between CPS and PHS, which included the $1,000,000.00 transfer to the Umar's, through the petition to open judgment filed August 1, 2001. We find that based on the information known by the plaintiff in May of 2001, through

*68*

the exercise of reasonable diligence, the plaintiff could undoubtedly have discovered the details of the APA, which included the $1,000,000.00 transfer to the Umar's, and Plaintiff would have been able to ascertain whether he had a valid cause of action based on that transfer.

Based on the above, we find that Plaintiff's claim of a fraudulent transaction under the Uniform Fraudulent Transfers Act is barred by the applicable statute of limitations set forth in 12 Pa.C.S.A. § 5109(1). Defendant PHS's Motion for Judgment on the Pleadings with regard to Count I, Uniform Fraudulent Transfers Act, is granted.

### b. Successor Liability

Plaintiff asserts that Defendant-PHS is liable to the plaintiff under the successor liability doctrine. According to the plaintiff's amended complaint, PHS is a successor because PHS took over CPS's entire business operations, including its contracts and staff. (Amended Complaint ¶ 31). Furthermore, Plaintiff claims that the transaction between CPS, PHS and the Umar's was made without adequate consideration and no provision was made for all of the creditors of the selling corporation. (Amended Complaint ¶ 32).

It has been clearly established in Pennsylvania that "when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." *Hayduk v. Workers' Compensation Appeal Board*, 906 A.2d 622, 632 (Pa. Commw. 2006); citing *Continental Insurance Company v. Schneider, Inc.*, 873 A.2d 1286 (2005). "This general rule of non-successor-liability can be overcome if it is established that (1) the purchaser expressly or implicitly agreed to assume liability, (2) the transaction amounted to a consolidation or merger, (3) the purchasing corporation was merely a continuation of the selling corporation, (4) the transaction was fraudulently entered into to

escape liability, or (5) the transaction was without adequate consideration and no provisions were made for creditors of the selling corporation." *Hayduk v. Workers' Compensation Appeal Board*, 906 A.2d 622, 632 (Pa. Commw. 2006); citing *Continental Insurance Company v. Schneider, Inc.*, 873 A.2d 1286 (2005).

In the instant case, the APA between PHS and CPS includes a section entitled 'Excluded Liabilities,' which specifies that PHS did not assume any of CPS's litigation or claims, specifically including those related to medical malpractice. There is also nothing in the record to indicate that this particular transaction amounts to a consolidation or merger.

Plaintiff does appear to claim in paragraph 31 of his amended complaint that Defendant-PHS is merely a continuation of the selling corporation. However, the Commonwealth Court in *Hayduk* upheld the Board's decision that the new Employer was not a successor to Princeton, the former employer, even though "the sale of productive assets took Princeton out of business in the Commonwealth of Pennsylvania, the business operations continued without substantial interruption, the products and contracts were the same before and after the sale, and virtually all personnel were the same before and after the sale."

In the instant case, the claims made by the plaintiff are in no way more encompassing than those made in the *Hayduk* case. Therefore, we too find that the current situation does not amount to a continuation of the selling corporation. With regard to the fourth way to overcome the general rule, the plaintiff's claims of an alleged fraudulent transaction are barred by the applicable statute of limitations in section 5109 of the UFTA.

The amended complaint does specifically assert that the transaction was entered into without adequate consideration and no provision was made for all of the creditors of the selling corporation. However, Article I(B)(1) of the Oversight Agreement, requires "payment of the

amounts owed to the CPS creditors listed on Schedule '1.'" (Exhibit B of Defendant PHS's Answer to Plaintiff's Amended Complaint).

Plaintiff also asserts that the $14,000,000.00 paid by PHS to CPS in order to obtain CPS's assets is inadequate consideration. Adequate consideration is defined as consideration that is equal or reasonably proportioned to the value of the consideration for which it is exchanged. *Estate of Beck*, 414 A.2d 65 (1980). It is well accepted that the court generally will not engage in an inquiry as to the adequacy of this exchange. *Krosnar v. Schmidt Krosnar McNaughton Garrett Co.*, 423 A.2d 370 (Pa. Super., 1980); *Thomas v. Thomas Flexible Coupling Co.*, 46 A.2d 212 (1946). We, like many courts before us, will not delve into the adequacy of the consideration in this instance, as $14,000,000.00 was the price bargained for in exchange for CPS's assets.

We find that the plaintiff has not stated a valid exception to this Commonwealth's general rule of non-successor-liability. Defendant-PHS's motion for judgment on the pleadings with regard to Count II, successor liability, is granted.

## II. Uniform Fraudulent Transfers Act claim against Pennsylvania Department of Corrections

Section 6602(e) of Title 42, Dismissal of litigation, provides in pertinent part, "the court shall dismiss prison conditions litigation at any time… if the court determines any of the following: (2) The prison conditions litigation… fails to state a claim upon which relief may be granted or defendant is entitled to assert a valid affirmative defense." 42 Pa.C.S.A. § 6602(e)(2).

Prison conditions litigation is defined in Section 6601 as "a civil proceeding arising in whole or in part under Federal or State law with respect to the conditions of confinement or the

71

effects of actions by a government party on the life of an individual confined in prison." 42 Pa.C.S.A. § 6601. Here, the plaintiff's complaint asserts that Defendant PA DOC allowed a transfer of prison medical contracts from CPS to PHS even though the transfer was fraudulent to unsecured inmate creditors of CPS, such as the plaintiff and resulted in Plaintiff's inability to collect on his default judgment obtained as a result of medical malpractice claim. Because the plaintiff's claim is centered on PA DOC defrauding unsecured inmate creditors, we find that it does fall within the definition of prison conditions litigation.

In the instant case, we have already set forth our reasoning and decided that the plaintiff's claim under the Uniform Fraudulent Transfers Act is barred by the applicable statute of limitations set forth in 12 Pa.C.S.A. § 5109(1). The language of Section 6602(e) makes it clear that the court **shall** dismiss prison condition litigation, such as this plaintiff's current claim, at any time if the court determines... that the defendant is entitled to an affirmative defense. 42 Pa.C.S.A. § 6602(e)(2). Here, we find that Defendant-PA DOC is entitled to the affirmative defense of the statute of limitations. Therefore, as required by 42 Pa.C.S.A. § 6602(e) we must dismiss the plaintiff's Uniform Fraudulent Transfers Act claim against PA DOC.

72

EUGENE WATSON,                    )        IN THE COURT OF COMMON
                                  )        PLEAS OF SOMERSET COUNTY,
          Plaintiff,              )              PENNSYLVANIA
                                  )
vs.                               )
                                  )        NO. 399 CIVIL 2008
                                  )
PRISON HEALTH SERVICES, INC. and  )
PENNSYLVANIA  DEPARTMENT  OF      )
CORRECTIONS,                      )
                                  )
          Defendants              )
                                  )
                                  )
                                  )

## ORDER

And now, this _22ᴺᴰ_ day of January, 2009, in accordance with the foregoing

Memorandum, Defendant Prison Health Services' Motion for Judgment on the Pleadings is

GRANTED and Defendant Pennsylvania Department of Corrections' Preliminary Objections

are SUSTAINED.


                                  BY THE COURT:

                                  _David C. Klementik_

                                  David C. Klementik, J.


73

## CERTIFICATE OF ELECTRONIC FILING

The undersigned counsel hereby certifies that pursuant to Local Rule 31.1(c) the text of the electronically filed version of the Appellees brief is identical to the hard copy filed with the Court on February 22, 2011. The undersigned also certifies that the brief has been scanned by Gold & Ferrante, P.C.'s anti-virus software and no viruses have been detected. Gold & Ferrante, P.C. uses Norton Anti-Virus.

Dated: February 22, 2011

By: _____ /S/ ALAN S. GOLD
ALAN S. GOLD

## CERTIFICATION OF BAR MEMBERSHIP

The undersigned certifies that he is a member of the Bar of the United States Court of Appeals for the Third Circuit and has been a member in good standing since December, 1982.

<u>     /S/ ALAN S. GOLD</u>
ALAN S. GOLD

## CERTIFICATION OF COMPLIANCE PURSUANT TO
## FEDERAL RULE OF APPELLATE PROCEDURE RULE 32(a)

1.    This brief complies with the type-volume limitations of Fed. R.App.P.

32(a)(7)(B) because:

__x__   this brief contains 9,466 words, excluding the parts of the brief

exempted by Fed.R. App.P. 32(a)(7)(B)(iii), or

____   this brief uses a monospaced typeface and contains ____ lines of test,

excluding the parts of the brief exempted by Fed. R. App. P.

32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P 32(a)(6) because:

___x___   this brief has been prepared in proportionally spaced

typeface using <u>Corel WordPerfect 10</u> in <u>Times New</u>

<u>Roman font size 14</u>, or

_____   this brief has been prepared in a monospaced typeface

using _____ with _____.


_____ /S/ ALAN S. GOLD
ALAN S. GOLD
Attorney for Appellees

Date: February 22, 2011

## CERTIFICATE OF SERVICE

I hereby certify that I have sent the Appellees Brief of Prison Health Services, Inc. via First Class U.S. Regular Mail on this date to the Clerk of Court of the United States Court of Appeals (original and 10 copies) for filing and to the following individuals via First Class U.S. Regular Mail and E-Mail as indicated below:

Darren Johnson, CF-8571
SCI-Graterford
P.O. Box 244
Graterford, PA 19426-0000


    _____/S/ ALAN S. GOLD
    ALAN S. GOLD

Dated: February 22, 2011